UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-61632-CIV-COHN/SELTZER

AUTONATION, INC.,

      Plaintiff,

v.

GAINSYSTEMS, INC.,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO DISMISS COUNTERCLAIMS

_____THIS CAUSE is before the Court upon the Plaintiff's Partial Motion to Dismiss Counterclaims and to Strike Demand for Exemplary Damages [DE 42] ("Motion to Dismiss Counterclaims").  The Court has carefully considered the Motion to Dismiss Counterclaims, Defendant's Response [DE 46], Plaintiff's Reply [DE 52], the record in this case and the applicable case law, and is otherwise advised in the premises.

### I.  BACKGROUND

On December 27, 2005, AutoNation, Inc. ("Plaintiff" or "AutoNation") and GAINSystems, Inc. ("Defendant" or "GAINSystems") signed a contract ("2005 Agreement") for GAINSystems to provide AutoNation with computer software and related services for an inventory forecasting system for AutoNation's new vehicle planning.  Counterclaim ¶ 12.  GAINSystems' software had not previously been applied to new vehicle planning and both parties were aware that "the use of the GAINS Software with respect to the automotive industry was a pioneering application."  Id. ¶ 63.

The 2005 Agreement did not contain any deadlines for completion.  Id. ¶ 68.
Instead, it required AutoNation to make payments to GAINSystems as GAINSystems
met certain performance milestones.  Id.  Additionally, AutoNation was required to
"provide properly trained personnel and accurate data to ensure proper operation of
the [GAINS] Software."  Id. ¶ 62.  "The 2005 Agreement allow[ed] either party to
terminate if the other party breache[d] its obligations[,] . . . provided the breach [was
not] cured within thirty (30) days after written notice by the non-breaching party."  Id. ¶
79 (internal quotation marks omitted).  Upon termination, AutoNation was required,
pursuant to the 2005 agreement, to return all software and GAINSystems proprietary
materials immediately and certify in writing that it had done so.  Id. ¶ 82.

The counterclaim alleges that complications arose when AutoNation was unable
to provide accurate input data.  Id. ¶ 66.  AutoNation thus requested that GAINSystems
undertake additional work to assist AutoNation in an effort to fulfill AutoNation's input
data obligations.  Id.  GAINSystems provided this additional work.  Id.  Additionally,
AutoNation failed to provide properly trained personnel, as required by the 2005
Agreement, which caused GAINSystems to incur additional expenses.  Id. ¶ 72.

In May 2007, the parties executed another agreement ("2007 Addendum") which
required GAINSystems to provide certain additional services in exchange for additional
payment by AutoNation.  Id. ¶ 69.  The 2007 Addendum did not contain any deadlines
for completion.  Id.  The 2005 Agreement and the 2007 Addendum will hereinafter be
referred to as the "Agreement."

The counterclaim further alleges that in October 2007, AutoNation delivered the

input data to GAINSystems, and soon thereafter communicated to GAINSystems that the deadline for completion was to be December 15, 2007.  Id. ¶¶ 71, 74.  Although GAINSystems never agreed to the December 15 completion deadline, GAINSystems attempted to meet the deadline and, in order to complete certain tasks, GAINSystems requested on-site access to AutoNation's facilities.  Id. ¶ 75.  AutoNation denied such requests.  Id.

On Friday, December 14, 2007, GAINSystems informed AutoNation that it had met AutoNation's requested deadline and the parties scheduled a meeting for Monday, December 17 for a demonstration of the system.  Id. ¶ 76.  AutoNation later canceled the scheduled meeting and thereafter refused to meet with GAINSystems.  Id. ¶ 77.

With the above factual allegations, GAINSystems asserts eight counterclaims against AutoNation: breach of contract (Count I), wrongful termination (Count II), unjust enrichment (Count III), quantum meruit (Count IV), breach of covenant of good faith and fair dealing (Count V), recoupment (Count VI), conversion (Count VII), and fraud (Count VIII).  Gainsystems also demands exemplary damages.  Autonation has moved to dismiss Counts II-VIII.


## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), courts routinely followed the rule set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that, "a complaint should not be dismissed for failure to state a

claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level."  550 U.S. at 555.   As under Conley, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Id. at 553-55.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id.  Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 556 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." Id. at 571.

## B.  Wrongful Termination

GAINSystems asserts that AutoNation wrongfully terminated the Agreement because AutoNation did not provide thirty days notice and an opportunity to cure prior to termination.  Id. ¶¶ 93-95.   AutoNation argues that the wrongful termination claim should be dismissed for two reasons: (1) wrongful termination of a contract does not

4

constitute an independent cause of action in the context of an arms-length commercial

contract; and (2) the wrongful termination claim is duplicative of the breach of contract

claim (Count I).  Motion to Dismiss Counterclaims at 4-5.

       Although Illinois recognizes wrongful termination as an independent cause of

action in the context of employment contracts, see, e.g., Patel v. Boghra, No. 07 C

6557, 2008 WL 2477695, at *5 (N.D. Ill. June 18, 2008), insurance policies, see, e.g.,

Draper v. Frontier Ins. Co., 638 N.E.2d 1176, 1180-81 (Ill. App. Ct. 1994), and

franchise agreements, see e.g., Zeidler v. A & W Rests., Inc., No. 03 C 5063, 2006 WL

1898056, at *3-4, no independent cause of action exists for the wrongful termination of

an arms-length commercial contract.   However, "'a complaint should not be dismissed

merely because plaintiff's allegations  do not support the particular legal theory he

advances[.]  [T]he court is under a duty to examine the complaint to determine if the

allegations provide relief on any possible theory.'" Moranos v. Royal Caribbean

Cruises, Ltd., 565 F. Supp. 2d 1337, 1338 (S.D. Fla. 2008) (quoting Bowers v.

Hardwick, 478 U.S. 186, 201 (1986), rev'd on other grounds).

       While Count II does not state a claim for wrongful termination, it does state a

valid breach of contract claim.  Count II alleges that a valid contract existed, AutoNation

breached that contract by failing to provide adequate notice prior to termination, and,

as a result, GAINSystems suffered damages.  Accordingly, Count II should not be

dismissed merely because GAINSystems asserted a wrongful termination claim as

opposed to a breach of contract claim.  However, AutoNation correctly points out that

Count II is mostly duplicative of Count I of GAINSystems' counterclaim, specifically

Paragraph 90.  The only additional allegation in Count II is that AutoNation failed to provide GAINSystems with the required thirty-days notice prior to termination. Accordingly, the Court will add this allegation to Paragraph 90 in Count 1 by interlineation and will dismiss Count II.

### C.  Unjust Enrichment/Quantum Meruit

Count III of GAINSystems' counterclaim asserts that when AutoNation was unable to provide accurate input data and adequately trained personnel, AutoNation requested, and GAINSystems did perform, additional work outside the scope of the 2005 Agreement to assist AutoNation.  Counterclaim ¶ 66. Because AutoNation has not compensated GAINSystems for the additional work it performed, GAINSystems claims that AutoNation has been unjustly enriched.  Id. ¶¶ 96-98.  Similarly, Count IV asserts that GAINSystems is entitled to recover under quantum meruit because AutoNation caused GAINSystems to perform services outside the scope of the parties' agreements and AutoNation did not compensate GAINSystems for those services.  Id. ¶¶ 99-101.

AutoNation argues that Count III should be dismissed for failure to state a claim because GAINSystems did not allege "what sorts of services were performed, why those services were outside the scope of the [Agreement], or how AutoNation received any benefit from such purported out-of-scope services."  Motion to Dismiss Counterclaims, at 8.  Furthermore, AutoNation argues that both Counts III and IV should be dismissed because there can be no quasi-contractual recovery where the provision of services is pursuant to an express contract.  Slamecka v. Empire Cosher

Poultry, Inc., 390 F. Supp. 2d 934, 938 (N.D. Ill. 2003).

The liberal pleading rules in federal court require only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(b), "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  However, "at a minimum, notice pleading requires that a complaint contain inferential allegations from which [the court] can identify each of the *material* elements necessary to sustain a recovery under some viable legal theory." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 960 (11th Cir. 2009) (quoting Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006)).

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 679 (Ill. 1989) (citations omitted).  GAINSystems, in Count III, alleged that although the 2005 Agreement required AutoNation to provide accurate input data, GAINSystems, at AutoNation's request, undertook additional work to assist AutoNation in fulfilling AutoNation's input data obligations.  Additionally, GAINSystems alleges that AutoNation failed to provide properly trained personnel as required by the 2005 Agreement and that this failure caused GAINSystems to incur additional expenses which benefitted AutoNation beyond those agreed to in the contract.  Count III thus meets the pleading standard as it asserts that AutoNation has

7

unjustly retained a benefit to GAINSystems' detriment, and that AutoNation's retention

of this benefit violates the fundamental principles of justice, equity, and good

conscience.  These same factual allegations also adequately state a claim for quantum

meruit as they allege "the performance of services by [GAINSystems,] the receipt of the

benefit of those services by [AutoNation,] and the unjustness of [AutoNation's] retention

of that benefit without compensating [GAINSystems]." Midcoast Aviation, Inc. v. Gen.

Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990) (noting that the elements of

quantum meruit include "the performance of services by the plaintiff, the receipt of the

benefit of those services by the defendant, and the unjustness of the defendant's

retention of that benefit without compensating the plaintiff").

Furthermore, neither the unjust enrichment claim nor the quantum meruit claim is

barred merely because the parties have entered into a contractual relationship.  The

general rule is that "a plaintiff cannot pursue a quasi-contractual claim where there is

an enforceable express contract between the parties." Barry Mogul & Assocs. v.

Terrestris Dev. Co., 643 N.E.2d 245, 251 (App. Ct. Ill. 1994).  The rationale is that

when parties enter into a contract, they assume the risk that their expectations may not

be fully realized and "[q]uasi-contract is not a means for shifting a risk one has

assumed under a contract." Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp., 432

N.E.2d 999, 1002 (Ill. App. Ct. 1982).  This general rule, however, does not apply when

the quasi-contractual claims concern matters which are outside the scope of the

contract.  See In re Managed Care Litig.,135 F. Supp. 2d 1253, 1269 (S.D. Fla. 2001)

(recognizing the legitimacy of a quasi-contractual claim despite the existence of a

contract because "there may be matters of dispute which are outside the scope of the contracts").

    While the Agreement in this case did address the same subject matter on which GAINSystems' unjust enrichment claim rests, the provision of accurate data and adequately trained personnel were outside the scope of the Agreement in that it was AutoNation's obligation to provide these services.  Nothing suggests that GAINSystems assumed the risk of performing these services when it entered into the Agreement and, therefore, the quasi-contract claims are not seeking to shift any risk that GAINSystems assumed.  Accordingly, AutoNation's motion to dismiss Counts III and IV of GAINSystems' counterclaim is denied.


### D.  Breach of Covenant of Good Faith and Fair Dealing

    Count V asserts that AutoNation breached an implied covenant of good faith and fair dealing by

> failing to provide properly trained personnel and accurate data, impeding and delaying GAINSystems' performance, seeking to impose an arbitrary and unreasonable deadline, requesting under false pretenses that GAINSystems undertake certain acts, refusing to review the results of GAINSystems' work in December 2007, failing to provide the cure period, and terminating the parties' agreements without cause.

Counterclaim ¶¶ 102-05.  AutoNation correctly points out, and GAINSystems concedes, that Illinois law does not recognize an independent cause of action for breach of covenant of good faith and fair dealing.  Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc., 212 F.3d 373, 381 (7th Cir. 2000).  However, for the same reasons stated in Part II.B of this order, this Court will construe GAINSystems'

counterclaims liberally and will not dismiss Count V merely because GAINSystems mislabeled its counterclaim.

Count V does in fact properly state a claim for breach of contract via breach of the covenant of good faith and fair dealing which is independent of Count I.  "The duty of good faith between contracting parties 'requires that a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously.'" Oil Express Nat'l v. Burgstone, 958 F. Supp. 366, 369 (N.D. Ill. 1997) (quoting Foster Enterprises, Inc. v. Germania Fed. Sav. & Loan Association, 421 N.E.2d 1375, 1381 (Ill. App. Ct. 1981)).  Accordingly, in order to adequately state a claim for breach of contract via a breach of covenant of good faith and fair dealing, "a plaintiff must plead existence of contractual discretion."  Mid-West Energy Consultants, Inc. v. Covenant Home, Inc., 815 N.E.2d 911 (Ill. App. Ct. 2004) (citing Northern Trust Co. v. VIII S. Mich. Associates, 657 N.E.2d 1095 (Ill. App. Ct. 1995)).

In this case, GAINSystems alleges facts that raise an inference that AutoNation had discretion under the Agreement and that AutoNation exercised this discretion in bad faith.  While some of the allegations in Paragraph 104 are duplicative of GAINSystems' breach of contract claim, the allegations that AutoNation "imped[ed] and delay[ed] GAINSystems' performance, [sought] to impose an arbitrary and unreasonable deadline, request[ed] under false pretenses that GAINSystems undertake certain acts, refus[ed] to review the results of GAINSystems work in December 2007, . . . and terminat[ed] the parties' agreements without cause" do not overlap with Count I.  Counterclaim ¶ 104.  These allegations suggest that AutoNation

had discretion under the Agreement and may have acted in bad faith.  Therefore,
AutoNation's motion to dismiss Count V of GAINSystems' counterclaim is denied.


### E.  Recoupment

Count VI of GAINSystems' counterclaim asserts that any right of recovery which
AutoNation is entitled to by virtue of GAINSystems' alleged breaches must be offset
against the damages GAINSystems suffered as a result of AutoNation's out-of-scope
work requests and failure to fulfill its obligations under the Agreement.  Id. ¶¶ 106-08.
AutoNation contends that Count VI should be dismissed for several reasons.  First,
AutoNation argues that GAINSystems' recoupment claim should be dismissed because
it is insufficient to provide AutoNation with adequate notice.  Motion to Dismiss
Counterclaims, at 12.  Second, AutoNation asserts that GAINSystems' recoupment
claim does not allege that it has been injured by a breach by AutoNation of another part
of the contract on which AutoNation's action is founded.  Id. at 11-12.  Finally, to
whatever extent GAINSystems' recoupment claim is predicated on breach of contract
obligations, AutoNation argues that Count VI is duplicative of Count I.  Id. at 12.

AutoNation's first argument, that the claim lacks sufficient factual detail, is
without merit.  Although Paragraph 107 of GAINSystems' counterclaim alleges only that
GAINSystems is entitled to recover because "AutoNation's out-of-scope work requests
and failure to fulfill its obligations forced GAINSystems to incur . . . damages[,]"
Paragraph 106 incorporates into Count VI numerous factual details from Paragraphs
60-105.  Complaint ¶¶ 106-07.  These allegations include enough factual detail "to

raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

While AutoNation is correct in asserting that a recoupment claim must allege that defendant "has been injured by a breach by plaintiff of another part of the contract on which the action is being founded[,]" Cox v. Doctor's Assocs., Inc., 613 N.E.2d 1306, 1315 (Ill. App. Ct. 1993), GAINSystems has in fact made this allegation. See Complaint ¶¶ 107-08 (alleging GAINSystems is entitled to recover under recoupment as a result of AutoNation's "failure to fulfill its obligations under the [A]greement"). Although Paragraph 107 also bases the recoupment claim on AutoNation's "out-of-scope work requests[,]" GAINSystems is permitted to assert this claim because, if it is determined that the alleged out of scope work requests, as described in Paragraph 66, were in fact governed by the Agreement, GAINSystems might be entitled to recover under the contract. Id. ¶ 107.

Nonetheless, despite the fact that counterclaim has sufficient detail, the recoupment counterclaim is duplicative of GAINSystems' breach of contract counterclaim. In order to prove the recoupment as pled, GAINSystems would have to prove a breach by Autonation and damages, the same as in their breach of contract counterclaim. Thus, Count VI will be dismissed.

## F.  Conversion

Count VII asserts that AutoNation, with the specific intent to harm GAINSystems, converted GAINSystems' property for its own use and benefit, depriving GAINSystems of its software and proprietary materials. Complaint ¶¶ 109-12. AutoNation asserts

12

that GAINSystems' conversion claim should be dismissed because: (1) GAINSystems did not make a demand for return of the property; (2) the economic loss doctrine bars GAINSystems' conversion claim; and (3) GAINSystems did not specifically identify the property which was allegedly converted.  Motion to Dismiss Counterclaims, at 13-15.

A conversion claim requires plaintiff to prove the following elements: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the other party wrongfully and without authority assumed control, dominion, or ownership over the property."  Loman v. Freeman, 890 N.E.2d 446, 461 (Ill. 2008).  The Supreme Court has held that "confidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit . . . ."  Carpenter v. United States, 484 U.S. 19, 26 (1987) (internal quotation marks omitted).  Although Illinois courts historically have not recognized an action for conversion of intangible rights, American Nat'l Ins. Co. v. Citibank, 543 F.3d 907, 910 (7th Cir. 2008) (citing Janes v. First Fed. Sav. & Loan Association, 297 N.E.2d 255, 260 (Ill. App. Ct. 1973)), Illinois courts may protect certain intangible rights where those rights are merged into tangible property "over which the alleged tortfeasor exercised dominion or ownership."  Film & Tape Works, Inc. v. Junetwenty Films, Inc., 856 N.E.2d 612, 624 (Ill. App.  Ct. 2006) (internal quotation marks omitted).

Although AutoNation correctly points out that, in general, a conversion claim requires plaintiff to prove "he made a demand for possession," Loman, 890 N.E.2d 446,

461, demand is not a required element of a conversion claim where original possession of the property is wrongful.  Furthermore, some courts have held that demand is not necessary where some other independent act of conversion can be shown.  <u>Pavilion v. Kaferly</u>, 561 N.E.2d 1245, 1253 (App. Ct. Ill. 1990) (citing <u>Jenson v. Chicago & W. Indiana R.R. Co.</u>, 419 N.E.2d 578, 593 (App. Ct. Ill. 1981)).

In any event, GAINSystems is "not required to allege every element of their conversion claim.  Rather, [it] need[s] only place [AutoNation] on notice of the claims against [it]."  <u>Niemeyer v. Williams</u>, No. 07-cv-1103, 2008 WL 906051, at *16 (C.D. Ill. Mar. 31, 2008).  Therefore, the mere lack of an allegation of demand does not warrant dismissal.

AutoNation also argues that the economic loss doctrine bars GAINSystems' conversion claim.

> In Illinois, the economic loss doctrine prevents a plaintiff from recovering purely economic losses that result from the defeated expectations of a commercial bargain.  However, this doctrine allows recovery in tort in the limited circumstances where the breach of duty in tort is independent of the contract between the parties.

<u>Essex Ins. Co. v. Lutz</u>, No. 06-CV-0114-DRH, 2007 WL 844914, at *5 (S.D. Ill. Mar. 20, 2007).

AutoNation also argues that GAINSystems did not specifically identify the property which was allegedly converted.  AutoNation misinterprets the rule that "the object of conversion must be a specific chattel . . . ."  <u>Southwest Why, Inc. v. Nutrition 101, Inc.</u>, 155 F. Supp.2d 1003, 1007 (C.D. Ill. 2001).  The term "specific" refers to a piece of property other than money, rather than a requirement that plaintiff identify, in

the complaint, specifically which piece of property was allegedly converted.  See

Daredia v Gold & Diamond Merch. Group, No. 97 C 8149, 1999 WL 965591, at *4 (N.D.

Ill. Sept. 30, 1999).  Instead, GAINSystems is bound only by the notice pleading

requirements of Twombly and Conley.  See supra Part II.A.

Furthermore, while AutoNation correctly points out that intangible property rights

cannot, standing alone, be the subject of a conversion claim, intangible property rights,

when "merged into a tangible [object] over which the alleged tortfeasor exercised

dominion and control" can be the subject of a conversion claim.  Film & Tape Works,

Inc. V. Junetwenty Films, Inc., 856 N.E.2d 612, 624 (Ill. App. Ct. 2006).  GAINSystems

satisfies this requirement by alleging that Autonation failed to return "tangible materials"

containing proprietary information and "any copies, extracts, or other reproductions of

such materials."  Counterclaim ¶ 83.

Lastly, AutoNation suggests that GAINSystems' conversion claim for the

conversion of GAINSystems' software might be preempted by the federal Copyright Act,

17 U.S.C. § 301(a) (2006).

> [T]o determine whether a state law claim is equivalent to one protected by
> the Copyright Act[,] the work at issue must be fixed in a tangible form and
> come within the subject matter of copyright as specified in [17 U.S.C.] § 102,
> and the right asserted must be equivalent to any of the rights specified in [17
> U.S.C.] § 106.

Natkin v. Winfrey, 111 F. Supp. 2d 1003, 1013 (N.D. Ill. 2000).

GAINSystems' conversion claim is not preempted by 17 U.S.C. § 301, as the

right GAINSystems asserts is not equivalent to any of the rights specified in 17 U.S.C.

§ 106.  Section 106 protects a copyright owner's right to reproduction of the

copyrighted work, preparation of derivatives based on the copyrighted work, distribution of copies of the copyrighted work, and public display and performance of the copyrighted work; however, GAINSystems alleges only that AutoNation has failed to return its software.  Counterclaim ¶ 82.  Thus, the right GAINSystems has asserted is not equivalent to any of the rights specified in 17 U.S.C. § 106 and is not preempted by 17 U.S.C. § 301.  Therefore, AutoNation's motion to dismiss GAINSystems' conversion claim is denied.

### G.  Fraud

GAINSystems alleges in Count VIII that AutoNation engaged in fraudulent conduct with a specific intent to harm GAINSystems.  Counterclaim ¶¶ 113-16. Specifically, GAINSystems alleges that in October and November letters between from Kevin Westfall, Michael Rossman and other commmunications, AutoNation requested that GAINSystems complete certain tasks by December 15, 2007, "that it would compensate GAINSystems if it performed this work, that AutoNation would not seek a refund if GAINSystems performed this work, and that AutoNation would cooperate in the completion of these tasks."  Id. ¶ 114.  But, GAINSystems alleges, "at the time these statements were made, AutoNation knew its requests were not genuine and did not intend to allow GAINSystems to successfully complete the tasks, intended to seek a refund despite GAINSystems' efforts, and did not intend to cooperate in the completion of these tasks."  Id.  AutoNation asserts that GAINSystems' fraud counterclaim should be dismissed for the following reasons: (1) the economic loss doctrine bars the fraud counterclaim; (2) misrepresentations of future promises are not actionable as fraud; (3)

GAINSystems failed to plead fraud with particularity; and (4) GAINSystems mischaracterized the reprentations made by AutoNation.  Motion to Dismiss Counterclaims, at 15-19.

The elements of a fraud claim include: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." Connick v. Suzuki Motor Co., 675 N.E.2d 584, 591 (Ill. 1996) (citing Board of Education of City of Chicago v. A, C, & S, Inc., 546 N.E.2d 580 (Ill. 1996)).   Rule 9(b)of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The particularity requirement of Rule 9(b) serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior."  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  The application of Rule 9(b), however, must not abrogate the concept of notice pleading under the federal rules.  Id.; Friedlander v. Nims, 755 F.2d 810, 813 n.2 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.").

More specifically, the Eleventh Circuit stated in Ziemba that: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what

documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  256 F.3d at 1202 (quotations and citations omitted); U. S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  Allegations of date, time, or place satisfy the requirement of Rule 9(b) that the circumstances of the fraud be alleged with particularity, but alternative means are also available to satisfy the rule.  Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988).

There are several problems with GAINSystems' fraud counterclaim which require dismissal of Count VIII.  GAINSystems, in its counterclaim, refers only to October and November 2007 "correspondence[s] from Kevin Westfall and Michael Rossman, among other communications" as evidence of fraudulent conduct.  Counterclaim ¶ 114. However, AutoNation, in its motion to dismiss, has attached October and November 2007 correspondences from Kevin Westfall and Michale Rossman, and these correspondences are inconsistent with GAINSystems allegations.  Motion to Dismiss Counterclaims, Ex. A, Ex. B.  Although the general rule is that a court, when ruling on a motion to dismiss, "must accept as true all of the factual allegations contained in the complaint[,]" a limited exception exists.  Twombly, 550 U.S. 544, 572 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)) (internal quotation marks omitted).  The Court may consider documents referred to by a plaintiff in a complaint

which are central to the plaintiff's claim for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment.  Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997) (opinion of then United District Court Judge Stanley Marcus attached to Eleventh Circuit opinion); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D. Fla. 1998).

Paragraph 114 of GAINSystems' complaint alleges in part that, in October and November 2007 correspondences, Kevin Westfall, Senior Vice President of Sales for AutoNation and Mike Rossman, Vice President of Sales for Autonation, represented to GAINSystems that AutoNation "would compensate GAINSystems if it performed [certain requested] work, that AutoNation would not seek a refund if GAINSystems performed this work, and that AutoNation would cooperate in the completion of these tasks." Counterclaim ¶ 114.  However, the actual October and November 2007 correspondences from Westfall and Rossman submitted by Gainsystems do not support these allegations.  While Westfall does request that GAINSystems perform certain work by December 15, 2007, neither Exhibit A nor B state that AutoNation "would compensate GAINSystems if it performed this work[.]" Counterclaim ¶ 114. Moreover, contrary to GAINSystems' allegations, AutoNation does not state that it "would not seek a refund if GAINSystems performed this work[.]" Id.  Rather, in the November 19, 2007 correspondence from Michael Rossman to GAINSystems, Rossman states, "Due to the lack of progress in the project and repeated missed deadlines, if Gain[systems] is unable to complete the requested tasks by December 15th it is [AutoNation's] intention to seek a full refund."  Motion to Dismiss

Counterclaims, Ex. B.  Accordingly, as these exhibits are likely the correspondences GAINSystems is referring to in Paragraph 114 of its counterclaim, its fraud claim must be dismissed because the correspondences simply do not state what GAINSystems alleges.

Even if GAINSystems is not referring to the October and November 2007 correspondences submitted by AutoNation, the general reference in Paragraph 114 of the counterclaim to "other communications" fails under the Rule 9(b) standard.  Fed. R. Civ. P. 9(b).  An allegation that AutoNation made fraudulent statements in "other communications" between the parties fails to allege "precisely what statements were made in what documents or oral representations[,] . . . the time and place of each such statement and the person responsible for making [the statement,] the content of such statements and the manner in which they misled [GAINSystems,] and what [AutoNation] obtained as a consequence of the fraud."  Ziemba, 256 F.3d 1194, 1202 (internal quotation marks omitted).  Accordingly, Count VIII of GAINSystems counterclaim is dismissed.

### H.  Exemplary Damages

GAINSystems asserts that, "[a]s a result of AutoNation's willful and wanton or outrageous conduct undertaken with complete disregard of GAINSystems' rights and AutoNation acting with actual malice or fraud toward GAINSystems and its business with a specific intent to harm GAINSystems, GAINSystems is entitled to an award of exemplary damages."  Counterclaim ¶ 118.  AutoNation argues that GAINSystems cannot collect exemplary damages because the Agreement states, "NEITHER PARTY

SHALL BE RESPONSIBLE TO THE OTHER FOR . . . EXEMPLARY DAMAGES, . . . EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES." Complaint Ex. 1 ¶ 9 (emphasis in original).

In ruling on AutoNation's motion to dismiss, this Court must accept GAINSystems' allegations as true. See Twombly, 550 U.S. 544, 553-55. Exemplary or punitive damages may be awarded only when the defendant's conduct is "outrageous, *i.e.,* defendant's acts are done with an 'evil motive' or with 'reckless indifference' to the rights of others." Maher & Assocs. v. Quality Cabinets, 640 N.E.2d 1000, 1008 (Ill. App. Ct. 1994) (quoting Johnston v. Anchor Org. for Health Maint., 621 N.E.2d 137, 140 (Ill. App. Ct. 1993)).  Paragraphs 74-78, 112, 116, and 118 of GAINSystems' counterclaim satisfy this requirement, as they provide facts which allow this Court to infer that AutoNation acted with reckless indifference to GAINSystems' rights. Counterclaim ¶¶ 74-78, 112, 116, 118.  Although AutoNation argues that GAINSystems has contractually waived its right to recover exemplary damages, Motion to Dismiss Counterclaims, at 19-20, GAINSystems asserts that the waiver of exemplary damages does not apply to damages from injuries unrelated to the contract because the provision makes no reference to tort claims. DE 46, at 19.  Because the plain language of the contract is ambiguous with regard to the waiver of exemplary damages as to tort claims, and the intent of the parties regarding this waiver poses a possible question of fact,  AutoNation's motion to strike GAINSystems' demand for exemplary damages is denied.

III.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that AutoNation's Partial Motion to Dismiss GAINSystems' Counterclaims and to Strike Gainsystems' Demand for Exemplary Damages [DE 42] is **GRANTED in part and DENIED in part** as follows:

1.      The Counterclaims in Counts II, VI and VIII are hereby **DISMISSED**;

2.      Count I is amended by interlineation by adding the words "of thirty (30) days" at the end of ¶ 90;

3.      The motion is denied in all other respects;

4.      Autonation shall file an answer to the counterclaims within ten business days of today's date.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of July, 2009.

JAMES I. COHN
United States District Judge

copies to:

counsel listed on CM/ECF